**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM B. JOHNSON<br><br>Plaintiff,<br><br>v.<br><br>OFFICER ANTHONY DE PROSPO, # 4483, Paterson Police Department, OFFICER MIGUEL A. CRUZ, # 4522, Paterson Police Department, OFFICER L. TORRES, # 4537, Paterson Police Department, OFFICER Q. MCELVEEN, # 4644, Paterson Police Department, SERGEANT S. ROONEY, #4457, Paterson Police Department, DETECTIVE CLAUDIO MELLA Passaic County Prosecutor's Office, RACHEL KUGEL, ESQ., Attorney-at-Law, and JOHN AND JANE DOES 1–10<br><br>Defendants. | Civ. Action No. 08-1813 (KSH)<br><br><br><u>OPINION</u> |

<u>**KATHARINE S. HAYDEN, U.S.D.J.**</u>

**I. Introduction and Facts**

William Johnson ("Johnson"), the plaintiff in this case, suffered two lacerations to the head and numerous bruises and welts to his arms, chest, shoulders and back during the course of an arrest by Paterson, N.J., police officers for selling drugs outside the Alexander Hamilton housing development on the morning of June 19, 2006.  After pleading guilty to possession of a controlled dangerous substance,  Johnson brought numerous claims under 42 U.S.C. § 1983 and New Jersey common law against the four officers involved in the incident—Quaema McElveen

("McElveen"), Anthony De Prospo ("De Prospo"), Luis Torres ("Torres"), and Miguel A. Cruz ("Cruz")—as well as Sgt. S. Rooney ("Rooney"), Detective Claudio Mella ("Mella"), and Rachel Kugel, Esq. ("Kugel"), who defended Johnson against the criminal charges [D.E. 1].  The claims against Rooney, Mella, and Kugel were dismissed [D.E. 6, 55].  Now before the Court are summary judgment motions by McElveen, De Prospo, and Torres [D.E. 74, 76, 79].

The facts, viewed in the light most favorable to the Johnson, are as follows:  At approximately 8 a.m. on June 19, 2006, De Prospo and McElveen were in a marked police car conducting drug surveillance outside the Alexander Hamilton housing development, which is known to Paterson police officers as a high crime area.  (Narrative Report, attached to Miklacki Certif. as Ex. D.)  They saw a man later identified as Johnson approach an individual later identified as Christopher Berkely ("Berkely"), and exchange what appeared to be money for small unidentified objects.  (*Id.*)  Berkely then got in an SUV and left the development's parking lot; De Prospo and McElveen stopped him and saw him clutching several glassine envelopes, which the officers believed to contain heroin.  (*Id.*)  They arrested Berkely for possession of CDS (*Id.*), and McElveen stayed with him in the squad car while De Prospo searched for Johnson (De Prospo Report, attached to Miklacki Certif. as Ex. F).  When Johnson saw De Prospo, he ran (Opp'n Br. Statement of Facts); De Prospo chased Johnson down on foot, apprehending him on the second floor of one of the housing development buildings.  (Narrative Report, attached to Miklacki Certif. as Ex. D.)

At this point, the two sides' versions of the events diverge.  Johnson states that De Prospo hit him over the head with a baton, causing him to partially lose consciousness (Johnson Certif., attached to Opp'n Br. as Ex. 41, at 2.), while De Prospo claims that Johnson lunged at him in an attempt to get to the exit and then tried to grab his service weapon (Narrative Report, attached to

2

Miklacki Certif. as Ex. D).  In any event, a struggle ensued, during which De Prospo hit Johnson about the upper body with his baton (*Id.*; Johnson Certif., attached to Opp'n Br. as Ex. 41, at 2). Torres and Cruz arrived to assist in subduing and handcuffing Johnson, after which Johnson claims the officers continued to beat, punch, and kick him.  (Narrative Report, attached to Miklacki Certif. as Ex. D; Johnson Certif., attached to Opp'n Br. as Ex. 41, at 2–3.)  The officers searched Johnson and found 48 baggies of what appeared to be crack cocaine, four envelopes containing heroin, and $215.  (Narrative Report, attached to Miklacki Certif. as Ex. D.)  Johnson was transported to Barnert Hospital (De Prospo Report, attached to Miklacki Certif as Ex. F.), where he was treated for approximately three days for his injuries (ER Nursing Note, attached to Opp'n Br. as Ex. 45; Personal History, attached to Opp'n Br. as Ex. 54; Admitting Form, attached to Opp'n Br. as Ex. 59), which included a two-inch laceration on the top of his head, a one-inch laceration on the back of his head (ER Nursing Note, attached to Opp'n Br. as Ex. 45; Emergency Department Physician Record, Page 2 of 3, attached to Opp'n Br. as Ex. 50; Photo Exhibits, attached to Compl.), a possible concussion (Physical Examination, attached to Opp'n Br. as Exs. 52, 53; Consultation Record, attached to Opp'n Br. as Ex. 58).  The photo exhibits also show several welts and bruises on his upper body.

On September 5, 2006, a state grand jury handed up a 17 count indictment against Johnson.  (Indictment, attached to Miklacki Certif. as Ex. G.)  He pled guilty to one count of possession of CDS, and on January 9, 2009, he was sentenced to a term of three years. (N.J. Department of Corrections Offender Details, attached to Miklacki Certif. as Ex. H.)  On April 14, 2008, he filed the complaint in this action, alleging the excessive use of force, false arrest and imprisonment, and malicious prosecution under § 1983, as well as the following claims under New Jersey common law: (1) conspiracy, (2) excessive use of force, (3) assault and battery, (4)

3

police brutality, (5) false arrest, (6) false imprisonment, (7) malicious prosecution, (8) misuse of

legal procedures, (9) willful misconduct, (10) official misconduct, (11) false swearing, (12)

perjury, (13) extreme outrage, (14) gross negligence, (15) intentional infliction of emotional

distress, and (16) willful blindness.  The claims against Rooney and Kugel were dismissed on

October 20, 2008, and the claims against Mella were dismissed on December 22, 2009.

McElveen, De Prospo, and Torres then moved for summary judgment.

## II. Summary Judgment Standard

Summary judgment will be granted if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ.

P. 56(c)).  If the moving party carries its burden of establishing that no genuine issue of material

fact exists, the burden shifts to the nonmoving party, who must show more than some

metaphysical doubt about the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  "In determining whether there are disputes of material fact, the Court

must view the record in the light most favorable to the nonmoving party and draw all inferences

in that party's favor."  *Ali v. Corr. Med. Servs., Inc.*, 2010 WL 3522081, at * 2 (D.N.J. 2010)

(citing *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir.1994)).

## III. False Arrest/False Imprisonment

Johnson claims that the officers falsely arrested and imprisoned him under both § 1983

and New Jersey law.  Initially, the Court notes that false arrest and false imprisonment are one

and the same.  *Fleming v. United Parcel Service, Inc.*, 255 N.J. Super. 108, 155 (Law Div. 1992).

This claim is barred under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the

Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination,
> or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–87 (footnote omitted).  A § 1983 claim related to a conviction that has not already

been invalidated is not cognizable.  *Id.* at 487.  In *Wallace v. Kato*, 549 U.S. 384, the Supreme

Court held that *Heck* does not operate to delay the accrual of a cause of action for false arrest, but

that the statute of limitations for such an action begins to run when lawful process commences.

*Id.* at 390, 392.  While this might suggest that *Heck* simply does not apply to claims for false

arrest, the *Wallace* court later noted that while a claim for false arrest accrues at the beginning of

lawful process, a later conviction would put the *Heck* bar into effect.  *Id.* at 394.  Therefore, this

Court must determine whether a judgment in favor of Johnson would imply the invalidity of his

conviction and sentence; if it would, Johnson's false arrest claim is barred.  *Heck*, 512 U.S. at

487.  A finding that Johnson was arrested without probable cause, *see Barletta v. Golden Nugget

Hotel Casino*, 580 F. Supp. 614, 617 (D.N.J.1984), would necessarily suggest the invalidity of

Johnson's plea and sentence.  Thus, Johnson's claim for false arrest is barred.

**IV. Malicious Prosecution**

Johnson also claims that the officers instituted a malicious prosecution against him by

planting evidence and falsifying reports.[1]  "To prevail on a malicious prosecution claim under [§]

1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the

---

[1] Johnson also asserts a state law claim of "misuse of legal procedure," which in New Jersey is called abuse of
process and is the civil analog to malicious prosecution.  *LoBiondo v. Schwartz*, 199 N.J. 62, 89-90 (2009).  Because
no civil proceeding was ever brought against Johnson, this claim cannot survive summary judgment.

criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)); *see also LoBiondo v. Schwartz*, 199 N.J. 62, 90 (2009) (listing elements of malicious prosecution claim under New Jersey law as follows: "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff"). As with false arrest, "[t]he existence of probable cause is an absolute defense to a malicious prosecution claim brought either under § 1983 or pursuant to New Jersey law." *Moore v. Carteret Police Dep't*, 254 F. App'x 140, 142 (3d Cir. 2007) (citing *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 389 (2000)). In a claim for malicious prosecution, a grand jury indictment is prima facie evidence of probable cause, which "may be rebutted by evidence that the presentment was procured by fraud, perjury or other corrupt means." *Camiolo v. State Farm Fire and Cas. Co.*, 334 F.3d 345, 363 (3d Cir. 2003) (quoting *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir.1989)).

Here, Johnson was indicted by a grand jury on seventeen counts, which is prima facie evidence of probable cause. (Indictment, attached to Miklacki Certif. as Exhibit G.) Though Johnson asserts in his complaint and in his certification that the officers falsified reports and planted evidence on him, these assertions are not supported by any evidence in the record. When, as here, the moving party has carried its burden under Fed. R. Civ. P. 56(c), the nonmoving party must show more than "some metaphysical doubt as to the material facts."

*Matsushita* at 586.  Johnson is obligated to provide "specific facts" showing there is a genuine issue for trial, Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587, but he has not done so. Therefore, the officers' motion for summary judgment is granted as to Johnson's malicious prosecution claims.

## V. Excessive Force

Johnson asserts that law enforcement officers used excessive force when arresting him; the claim sounds in the Fourth Amendment prohibition against unreasonable seizures and requires analysis under that Amendment's "reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The inquiry is an objective one and requires "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake," *id.* at 396, 397 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)), which includes weighing "whether the suspect posed an immediate threat to the safety of the officer or others, whether the suspect was actively resisting arrest, and the severity of the crime at issue."  *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002).  Other factors to consider are "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, the number of persons with whom the police officers must contend at one time," *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997) (quotation marks omitted)), and whether the force used was sufficient to cause injury.  *Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005) (quoting *Sharrar*, 128 F.3d at 822).  Whether the use of force is objectively reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.

### A. McElveen

McElveen argues that she cannot be subject to liability for excessive use of force because she was not involved in the physical apprehension of Johnson.  Johnson correctly notes that a police officer "has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  However, this duty only arises if the officer has "a realistic and reasonable opportunity to intervene." *Id.*  Other courts have held that such an opportunity exists only when excessive force is used "in his presence or otherwise within his knowledge," *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972), or if the officer saw his colleague use excessive force or had time to reach him.  *Putman v. Gerloff*, 639 F.2d 415, 423–24 (8th Cir. 1981).  Here, McElveen could not have intervened.  She stayed with Berkley at the patrol car outside of Building 5 while De Prospo, Torres and Cruz arrested and allegedly beat Johnson inside Building 11, (McElveen Report, attached to Opp'n Br. as Ex. 38; De Prospo Report, attached to Miklacki Certif as Ex. F.); because she was outside a separate building and was tasked with keeping Berkley secured in the back of the police car, she could not reasonably have intervened. Therefore, McElveen's motion for summary judgment is granted as to Johnson's excessive force claims.

### B. Torres and De Prospo

Torres and De Prospo actively participated in Johnson's arrest, so the Court must determine if there exists a genuine issue of material fact as to whether they used reasonable force in effecting the arrest.  De Prospo and McElveen's narrative report states the Johnson lunged at De Prospo and tried to grab his service weapon; as a result, the report states, De Prospo had to hit Johnson numerous times in the upper body with his baton.  (Narrative Report, attached to Miklacki Certif. as Ex. D.)  These facts are restated in the arrest report (Arrest Report, attached

to Miklacki Certif. as Ex. E) and "use of force" reports submitted by De Prospo, Torres, and

Cruz (Use of Force Reports, attached to Opp'n Br. as Exs. 64–66).  Johnson, however, disputes

whether he resisted arrest; he claims that he was running away from De Prospo and was hit in the

head from behind, leaving him semi-conscious.  (Johnson Certif., attached to Opp'n Br. as Ex.

41, at 2.)  He claims that while he was in this state, the officers dragged him into a building and

continued to assault him with their batons, fists and feet, even after he was handcuffed.  (*Id.* at

3.)  After being arrested, Johnson was sent to the emergency room and was later admitted to the

hospital, where he stayed for three days to be treated for head trauma, including two lacerations

and a likely concussion.  (Hospital Records, attached to Opp'n Br. as Exs. 42–62.)  Photos of

Johnson taken at the hospital show a two-inch laceration on top of his head and a one-inch

laceration on the back of his head—both of which were closed with sutures—as well as

numerous welts and bruises on his arms, chest, shoulders, and back.  The officers do not contest

the fact that Johnson was injured during the altercation, but they argue that inflicting the injuries

was justified.

Genuine issues of material fact exist as to whether the officers used excessive force.  As

indicated above, both sides have differing versions of the events surrounding the arrest, and

resolution of the disputed facts will likely depend significantly on credibility determinations,

which are inappropriate at the summary judgment stage.  *Abraham v. Raso*, 183 F.3d 279, 294

(N.J. 1999) (citing *Boyle v. County of Allegheny Pa.*, 139 F.3d, 386, 393 (3d Cir. 1998)).

### C. Qualified Immunity

The officers contend that even if they used excessive force when arresting Johnson, they

are entitled to qualified immunity because they reasonably believed the force used was lawful.  A

law enforcement officer engaged in a discretionary function is entitled to qualified immunity if

his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  At the time of the incident, it was clearly established that beating an incapacitated arrestee who no longer poses a threat violates the arrestee's constitutional rights.  *See, e.g.*, *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002).  Therefore, in this case, the question remains whether the officers reasonably knew that what they were doing violated this right.

Ordinarily, the qualified immunity analysis should not be fused into the substantive summary judgment analysis in an excessive force case, but there may be cases where the disputed facts impact the qualified immunity analysis.  *Giles v. Kearney*, 571 F.3d 318, 327 (3d Cir. 2009).  This is such a case.  Among the factual disputes is whether Johnson was conscious during the incident.  (*Compare* Johnson Certif., attached to Opp'n Br. as Ex. 41, at 2, *with* Narrative Report, attached to Miklacki Certif. as Ex. D (stating that De Prospo needed help getting Johnson to the ground and handcuffing him) *and* Arrest Report, attached to Miklacki Certif. as Ex. E (stating that Johnson "resisted arrest by not allowing himself to be handcuffed by using force")).  The resolution of this dispute, and others, will impact the reasonableness of the officers' belief that their conduct was lawful.  While the determination of whether an officer is entitled to qualified immunity is a question of law for the court to decide, any disputed factual issues relevant to the qualified immunity determination are for the jury to resolve.  *Curley v. Klem*, 499 F.3d 199, 210, 211 n.12 (3d Cir. 2007) (*Curley II*).

**VI. Conspiracy Claims Under §§ 1985 and 1986**

Johnson argues that under 42 U.S.C. §§ 1985 and 1986, the officers conspired to deprive him of his equal protection rights.  However, to maintain an action under § 1985, a plaintiff must establish that the defendants' actions were motivated by racial or other class-based animus,

*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), and Johnson has provided no evidence of such animus, apart from stating that he was the only African-American male in the parking lot when the officers allegedly attacked him.  (Opp'n Br., Statement of Uncontested Material Facts 1.)  A mere statement that the plaintiff is an African-American cannot withstand a motion to dismiss under § 1985, *Moss v. Perkins*, 682 F. Supp. 395, 396–97 (N.D. Ill. 1988), so it also cannot survive a motion for summary judgment.  "'[M]ere conclusory allegations of deprivations of constitutional rights' are insufficient to state a § 1985(3) claim."  *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (quoting *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972).  Summary judgment is granted on Johnson's § 1985 claim, and because Johnson can only succeed on his § 1986 claim if his § 1985 claim is successful, *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir.1980), summary judgment is granted on that claim, as well.

## VII. New Jersey Common Law Claims

### A. Assault and Battery

Among numerous claims Johnson asserts under New Jersey common law are claims for assault and battery.  "A person is subject to liability for the common law tort of assault if: '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.'"  *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591 (2009) (quoting *Wigginton v. Servidio*, 324 N.J. Super. 114, 129 (App. Div. 1999)).  A battery consists of a nonconsensual touching.  *Id.*  While an officer effecting an arrest may use any force that is reasonably necessary, he may be civilly liable for the use of excessive force.  *Wimberly v. City of Paterson*, 75 N.J. Super. 584, 594, *overruled on other grounds*, *Johnson v. Dobrosky*, 187 N.J.

11

594, 608 n.7 (N.J. 2006).  Johnson's assault and battery claims, therefore, go hand in hand with his excessive force claims.  Because there exists a genuine issue of material fact as to whether the officers used excessive force, summary judgment is denied on Johnson's assault and battery claim.

### B. The Remaining New Jersey Claims

Finally, Johnson asserts the following claims under New Jersey common law: willful misconduct, official misconduct, false swearing, perjury, extreme outrage, gross negligence, intentional infliction of mental distress, and willful blindness.[2]  There is no evidence in the record to support any of these allegations, other than mere assertions in the complaint, so summary judgment is granted on these claims.  *See Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).

### VIII. Conclusion

McElveen's motion for summary judgment [D.E. 74] is granted in its entirety.  De Prospo's [D.E. 79] and Torres's [D.E. 76] motions for summary judgment are denied as to Johnson's claims of excessive force and assault and battery, and granted as to the remainder of Johnson's claims.

/s/ Katharine S. Hayden

December 30, 2010                                Katharine S. Hayden, U.S.D.J.

---

[2] The Court notes that willful blindness is not a cause of action in and of itself.  Rather, it is a proxy for the element of knowledge.  *See Matter of Skevin*, 104 N.J. 476, 486 (1986) ("The concept arises in a situation where the party is aware of the highly probable existence of a material fact but does not satisfy himself that it does not in fact exist.").